IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOANN J. SPANGLER, | ) |
| | ) |
| Plaintiff, | ) C.A. No. 6-1394 |
| | ) |
| vs. | ) |
| | ) |
| MODERNE GLASS CO., INC., et al., | ) |
| | |
| Defendant. | |

AMBROSE, Chief District Judge

# OPINION AND ORDER

## SYNOPSIS

In this civil action, Plaintiff alleges that Defendant, her former employer, discharged her in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621 et seq., and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101 et seq. Defendant has moved for summary judgment, on grounds that Plaintiff failed to exhaust her administrative remedies with respect to her ADA claim, and that she has adduced insufficient evidence to support her ADEA claim.

For the following reasons, Defendant's Motion will be granted.

## OPINION

### I. FACTS

Unless otherwise indicated, the following facts are undisputed. By way of background, I include several facts that are not material to summary judgment.

Defendant is a custom decorator of beverage ware and award and

recognition products for the ad specialty industry.  Defendant has eight production departments, including Lehr (a curing oven that bakes designs onto glassware), Decal, and Etch.  It employs approximately 350 employees, and conducts operations in two buildings in Hopewell, PA.  Thomas McKnight is Defendant's owner, president, and CEO. John Bailey, Defendant's Plant Manager, has been in that position since May, 2003; Deborah Bara, Defendant's Human Resource Manager, has been in that position since May of 2003.  Jim Devine was the supervisor of Defendant's Etch department from 1999 through 2006.

     Plaintiff began working for Defendant in the Decal department, in 1999.  Sometime prior to 2000, Plaintiff was moved out of that department, and transferred to a Lehr loader position.  In that position, Plaintiff was required to take glassware off of one conveyer belt, inspect the glassware, and place it on another conveyor belt that took it through the Lehr.  In April 2003, Plaintiff suffered an aneurysm, and she was unable to work until  September 22, 2003.  Plaintiff returned to work in the Lehr loader position.  Plaintiff remained in the Lehr Loader position until April 20, 2004, at which time she was transferred to a Wipe-offs position as a result of her inability to keep up with the Lehr.  Employees who hold the Wipe-offs position are required to stand while performing their job duties.

     At some point, Plaintiff requested a transfer out of the Wipe-offs position.  At the time, the only openings available were in the Etch department, and Plaintiff was transferred – over her objection, she states -- to that department on or about June 1, 2004.  Prior to the transfer, Bara contacted Devine, head of the

Etch department, and asked whether Devine could use an employee from the Industrial Boulevard Facility. At the time, the Etch department needed more Tapers in order to keep up with production. A Taper, who is permitted to sit down while performing his duties, applies tape to certain portions of glass products so that when the products are sandblasted, the taped portions are not damaged.

Plaintiff alleges that a female management employee informed her that she was being transferred because Defendant wanted her to have a sit-down job; she cannot recall the person who made the statement. She believes that it was the woman in human resources at the time of the transfer. At the time, Bara was in that position. Bara avers that she did not tell Plaintiff any such thing; Plaintiff believes that it could have been Bara.

Subsequently, Plaintiff was laid off as part of a ten-person layoff on June 3, 2005.[1] Prior to that date, McKnight told Bailey to conduct a layoff, and that employees were to be selected for layoff based on poor performance. Bailey then told the supervisors of six of Defendant's eight departments to give Bailey a list of his or her respective department's poorer performers, who the supervisor would like to be laid off. Two shorthanded departments were excluded from the layoff. Three employees from the Etch department, and the only three Tapers in the department at the time, were ultimately laid off: Plaintiff, Charity Jackson (age 24), and Amanda Fike (age 21). Devine made the decision to terminate their

---

[1]Defendant conducted five group layoffs between September 22, 2003 and June 2, 2005. The layoffs were as follows:12/23/03, 51 employees laid off; 1/5/04, 42 employees; 2/4/04, 24 employees; 6/17/04, 24 employees; 12/21/04 unknown, as Defendant's records do not indicate exactly how many were laid off. None of these layoffs included Plaintiff.

employment by submitting a list with only those three employees in response to Bailey's request. Devine picked the three Tapers, because they have the least amount of skill in the department and their positions could be covered by the more skilled employees in the department; he did not know whether they were the worst performers. Devine was 63 years old at the time of the layoff, and he did not know Plaintiff prior to her transfer into his department in 2004. Devine did not know that Plaintiff had previously worked as a Lehr Loader.

Bailey then compiled the final list of ten employees who would be laid off, and included the three Tapers on the list. Bailey did not perform any analysis of the employees' performance, but instead relied on Devine's decision to select those three for layoff.

Plaintiff contends that the layoff constituted age discrimination because "there was people that were older than me and younger than me and some people didn't do as much as me and I'm the one that was let go, but other people got to stay there." Defendant had a recall procedure whereby laid off employees may be called back to work usually by department. None of the employees laid off at the same time as Plaintiff were eligible for recall, and none were recalled. Fike and Jackson, however, reapplied for work with Defendant and were later rehired. Plaintiff believes that Tom Evans, a Sandblaster in the Etch department who Defendant retained, was approximately thirty years old at the time of her layoff. Defendant had an attendance point system, under which, apparently, a certain number of points qualified a person for termination or other disciplinary action. It appears that Evans had accumulated more points

under this system than had Plaintiff.

After Plaintiff's termination, she filed various documents with the EEOC. Defendant has submitted, and Plaintiff does not dispute the veracity of, the contents of her EEOC file.  On an EEOC General Information Questionnaire, Plaintiff checked "Disability" and "Age" as her protected classes.  In addition, she described her aneurysm, and surrounding circumstances, in an ADA Intake Questionnaire submitted to the EEOC.  The questionnaires are stamped as received by the EEOC on March 23, 2006.  A subsequent letter to Plaintiff from the EEOC dated April 28, 2006 asks Plaintiff to review charge forms and make any corrections, and states that the matter may be investigated under Title VII and the ADEA.  Plaintiff's formal charge is signed and dated April 29, 2006; it was stamped received by the EEOC on May 2, 2006.  In the formal charge, boxes indicating that "sex" and "age" were the bases for discrimination are checked; the box for "disability" is not checked. Additionally, the narrative in the formal charge describes only Plaintiff's allegations regarding gender and age discrimination, and names only Title VII and the ADEA.  There is no mention of disability.  The Notice of Charge of Discrimination issued to Defendant enclosed a copy of the charge, and indicates that the charge was under Title VII and the ADEA; a box provided for the ADA was not checked.  Finally, the EEOC issued a Dismissal and Notice of Suit Rights, the so-called "right-to-sue letter," dated July 20, 2006, which refers to time limitations applicable to Title VII, the ADA, the ADEA, and the Equal Pay Act ("EPA").

**II. Applicable Standards**

Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the Court must examine the facts in a light most favorable to the party opposing the motion. International Raw Materials, Ltd. V. Stauffer Chem . Co., 898 F. 2d 946, 949 (3d Cir. 1990). The moving party bears the burden of demonstrating the absence of any genuine issues of material fact. United States v. Onmicare, Inc., 382 F. 3d 432 (3d Cir. 2004). Rule 56, however, mandates the entry of judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof. Celotex Corp. v. Cattrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 265 (1986).

### III. Defendant's Motion

#### A. Disability Discrimination

I first address Defendant's argument that Plaintiff has failed to exhaust her administrative remedies with respect to her claim of disability discrimination.

"Failure to exhaust administrative remedies is an affirmative defense, and the burden of pleading and proving non-exhaustion rests with the defendants." Foster v. Morris, 208 Fed. Appx. 174, 178 (3d Cir. 2006). The purpose of the exhaustion requirement is to provide the agency the chance to "investigate, mediate and take remedial action with respect to a charge of discrimination." Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398 (3d Cir. 1976). The operative

question, therefore, is whether the acts in the suit "'are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." Antol v. Perry, 82 F.3d 1291, 1295 (3d Cir. 1996) (quoting Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984)).

Because Plaintiff's EEOC questionnaires directly refer to her disability, I will first address the impact of such questionnaires on the exhaustion analysis.

> Courts in this circuit have uniformly held that a plaintiff fails to exhaust where he checks off a claim on an intake questionnaire but then omits the claim from the formal EEOC formal charge [sic]. The Court agrees with these cases. Intake questionnaires do not serve the same function as the formal charge and are not part of the formal charge. A questionnaire, therefore, does not satisfy the exhaustion requirement where a claim marked off in the questionnaire is omitted from the charge and where the EEOC does not investigate the omitted claim.

Elston v. UPMC - Presbyterian Shadyside, No. 06-CV-329, 2007 U.S. Dist. LEXIS 78531, at **33 (W.D. Pa. Oct. 23, 2007) (citations omitted).[2]

The reasoning behind this rule, in part, is that if a plaintiff "filed her formal charge after she filled out her intake questionnaire," such conduct "[implies] that she abandoned those claims in her formal complaint." Winter v. Cycam/Med Source Techs., 166 Fed. Appx. 593, 595 (3d Cir. 2006).

As I noted at the Motion to Dismiss stage, Plaintiff checked "Disability" as her protected class on an EEOC General Information Questionnaire. In addition, she described her aneurysm, and surrounding circumstances, in an ADA Intake

---

[2]Although I would not describe this conclusion as "uniformly" reached in this circuit, see, e.g., Martinez v. Quality Value Convenience, No. 96-7715,1998 U.S. Dist. LEXIS 15685 (E.D. Pa. Sept. 29, 1998), it certainly reflects the majority of pertinent and recent authority.

Questionnaire submitted to the EEOC. These questionnaires were received by the EEOC on March 23, 2006. A letter from the EEOC dated April 28, 2006 asks Plaintiff to review the charge forms and make any corrections, and states that the matter may be investigated under Title VII and the ADEA. Plaintiff's formal charge is signed and dated April 29, 2006; it was stamped received by the EEOC on May 2, 2006. In the Complaint, Plaintiff checked off boxes indicating that "sex" and "age" were the bases for discrimination; the box for "disability" was not checked. In addition, her charge narrative contains no mention of any potential disability claim, or factual basis therefor. The chronology and content of the filings, under applicable case law, cannot fulfill exhaustion requirements. In other words, the questionnaires cannot necessarily cure deficiencies in the formal charge.

Plaintiff, however, correctly suggests that a charge not stated, or a mere box left unchecked, in the administrative complaint may be permitted to go forward in court if there is "a close nexus between the facts supporting each claim or an additional claim in the judicial complaint...fairly appear[s] to be an explanation of the original charge or one growing out of it." Brenner v. Harleysville Ins. Cos., No. 01-08, 2002 U.S. Dist. LEXIS 18494, at *32 (E.D. Pa. Sept. 30, 2002). Plaintiff argues that her claims for age and disability are sufficiently related.

In particular, Plaintiff points to Hicks v. ABT Associates, Inc., 572 F.2d 960 (3d

Cir. 1978),[3] in which our Court of Appeals concluded that neither the four corners of the EEOC complaint or the scope of the actual EEOC investigation limit a subsequent judicial complaint. Instead, the court identified the key inquiry as whether the judicial complaint could "reasonably be expected to grow out of the charge of discrimination." Id. at 966. In Hicks, plaintiff, a white male, filed an EEOC charge complaining of disparate treatment based on race, in violation of Title VII. Id. at 964. In the charge, plaintiff identified only race as the basis for his claim, but later filed a judicial complaint adding a claim for gender discrimination. Id. at 962, 964. There was evidence that the plaintiff had attempted to amend his EEOC charge to include a gender claim, but that the EEOC had rejected that attempt. Id. at 964. Defendant argued that plaintiff had not exhausted his remedies for the gender claim. Id. at 963. In response, the court noted that it would not penalize plaintiff if the EEOC had erred in rejecting his amendment. Id. at 964. In addition, it noted a close nexus between the facts underlying and supporting the race and gender claims. Id. at 967. For example, plaintiff complained about the hours he was required to work, as compared to three women, two of whom were black. Id. at 965.

Noting the lack of investigative record from the EEOC, the Hicks Court found that it could not conclude whether a reasonable investigation would have reached allegations of race, rather than gender, discrimination. Id. at 967. It restated the holding, in Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398-99

---

[3]Plaintiff also points to Martin v. Anheuser-Busch, 2006 U.S. Dist. LEXIS 22207 (D.N.J. Mar. 30, 2007), which relied on Hicks. In Martin, however, unlike this case, the questionnaire and formal EEOC charge were dated the same day. In that case, the facts suggested EEOC error; here, Plaintiff makes no such argument.

(3d Cir. 1976), that the parameters of a permissible civil action "are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination...." Hicks, 572 F.2d at 966. Importantly, however, the court observed that "[a] finding that the EEOC would have discovered a claim for sex discrimination in the course of a reasonable investigation does not itself meet the standard...The district court must further find that the sex discrimination claims which would have been uncovered were reasonably within the scope of the charge filed with the EEOC." Id.

Hicks is distinguishable from this case. Unlike the factually interrelated agency and judicial charges at issue in Hicks, Plaintiff's age discrimination and disability discrimination claim share few underlying facts. The ADA claim relies heavily on the nature of Plaintiff's physical condition prior to and at the time of her layoff, and Defendant's perception thereof; the age discrimination claim, the operative facts of which are recited in Plaintiff's EEOC charge, relates primarily to the the ages of Plaintiff and her co-workers at the time of layoff. The only significant shared fact is that of termination.[4]

In this case, unlike in Hicks, nothing in Plaintiff's EEOC complaint would have led the EEOC to suspect that she had a disability, was perceived as disabled, or was subjected to disability discrimination. Cf. Leong v. Potter, 347 F.3d 1117,

---

[4] To syllogistically compare Hicks and this case – i.e., this Plaintiff complained that she was treated differently than a younger co-worker, who was not disabled, and in Hicks the plaintiff complained that he was treated differently than African-American co-workers, who were female -- would be an oversimplification. Race and gender claims both arise under Title VII, and involve similar analyses, the factual underpinnings of which overlapped in Hicks; age and disability claims arise under different statutes, and require different factual premises. In addition, in the present case, Plaintiff does not argue that Evans is a comparator with respect to the disability claim; there is no evidence of his status in that regard.

1122 (9th Cir. 2003). Even assuming that the EEOC would have or actually did discover Plaintiff's ADA claim during the course of its investigation,[5] I cannot find that such a claim was reasonably within the scope of the EEOC complaint. Plaintiff proffers no evidence that would permit the conclusion that her status as a person over forty years of age – or as a sixty-four year old -- would or should be approached, from an investigative perspective, as potentially subject to disability discrimination merely as a result of her age. One simply cannot reasonably expect an investigation of disability to materialize in the absence of any mention or suggestion of disability. To do so would stretch liberal interpretation to breaking point.

    Plaintiff urges, in addition, that we consider the factors identified in Robinson v. Dalton, 107 F.3d 1018 (3d Cir. 1997). The factors enunciated therein related, in particular, to the factual situation there presented – i.e., plaintiff filed with the EEOC for race discrimination only; was subsequently discharged from work; unsuccessfully attempted to add a claim of retaliatory discharge to the EEOC complaint; and then filed a lawsuit for retaliatory discharge. The Robinson court reiterated the parameters enunciated in Hicks and Ostapowicz, and then listed factors to the district court to consider when determining whether the EEOC's decision not to investigate the retaliatory discharge was reasonable. Id. at 1026. Here, Plaintiff did not attempt to add a charge before the EEOC, and there

---

[5]On her Witness Information form, Plaintiff listed three witnesses, one who is characterized, succinctly, as a person who knows "why I was discharged without any notice," and two who are listed with similar brevity as co-workers and aware of Plaintiff's "history with the company." In terms of the scope of investigation, I note the absence of any specific suggestion that witnesses might have provided, for example, medical information or other evidence relating to Plaintiff's physical condition.

was no decision not to investigate.  Accordingly,  Robinson does not apply.[6]

As a final matter, Plaintiff mentions, as did this Court at the Motion to Dismiss stage,[7] that the EEOC's right-to-sue letter references the ADA. "At the bottom of [the Dismissal and Notice of Rights] form letter are basic summaries of rights under Title VII, the ADA, the ADEA, and the EPA. None of these summaries constitute opinions by the EEOC that the recipient has a claim under any of these statutes. They are summaries of the rights guaranteed by each of those statutes." Jackson v. Dana Corp., No. 98-5431, 1999 U.S. Dist. LEXIS 17380, at * (E.D. Pa. Nov. 9, 1999).  Without more, this single reference, not particular to Plaintiff, does not suggest that the agency investigation either encompassed or should have encompassed the ADA claim.  The letter also references the Equal Pay Act, for example, which one could hardly argue is implicated in this matter.[8] Accordingly, the EEOC's form right-to-sue letter does not alter my conclusion.

In sum, although exhaustion is to be liberally construed, this does not mean that the requirement may be taken lightly.  While the requirements of exhaustion "are to be interpreted in a nontechnical fashion, the aggrieved person is not permitted to bypass the administrative process." Ostapowicz, 541

---

[6] To the extent Robinson could be said to apply, however, its factors do not preclude judgment.  Here, the actual complaint, filed approximately a month later than the questionnaires, in no way implies disability.  Defendant offers, as a reason for the discharge, a group layoff.  I have, as partly discussed above, examined the entirety of the EEOC's file submitted to the Court.   Under the circumstances, I cannot find that a claim for disability discrimination fairly falls within the scope of the age discrimination claim.

[7] At the Motion to Dismiss stage, I was prepared to consider the right to sue letter in a context to be developed during discovery; that context, however, never developed.

[8] The Equal Pay Act is implicated by allegations of different pay for equal work. Eason v. Del Monte Foods, No. 04-1698, 2006 U.S. Dist. LEXIS 65543, at *26 (W.D. Pa. Sept. 14, 2006)

F.2d at 398. Again, "[t]he purpose of requiring exhaustion is to afford the EEOC the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court." Perry, 82 F.3d at 1296. Although I am not without empathy for Plaintiff's situation, it is apparent that the EEOC did not have the opportunity to consider Plaintiff's ADA claim. Therefore, I find that Plaintiff failed to exhaust her administrative remedies with respect to that claim.

### B. Age Discrimination

Next, I address Defendant's arguments that Plaintiff has failed to demonstrate her prima facie case, in that she cannot show that similarly situated employees were retained; and that even if this element were met, she cannot demonstrate pretext.

### 1. Applicable Standards

In a case such as this, I apply the burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

Under that paradigm, the plaintiff has the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination: "1) he is within the protected class...; 2) he was qualified to have been retained; 3) he suffered from an 'adverse employment action'; and 4) the employer retained a 'sufficiently younger' and 'similarly situated' individual to permit a reasonable inference of age discrimination. A plaintiff who cannot make a prima facie showing of each of these elements cannot survive summary judgment." Embrico

v. United States Steel Corp., 404 F. Supp. 2d 802, 818 (E.D. Pa. 2005) (citation omitted).

Next, if the plaintiff succeeds in proving a prima facie case, the burden shifts to the defendant to produce some legitimate, non-discriminatory reason for the employee's rejection. In pretext discrimination cases, when the burden shifts to defendant, "the employer need not prove that the tendered reason actually motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff." Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994).

Should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not the true reasons, but were a pretext for discrimination. Texas Dept. Of Community Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). To rebut the defendant's legitimate reason for its conduct, plaintiff must provide sufficient evidence from which a factfinder could either reasonably reject the defendant's explanation, or believe that an invidious discriminatory reason was more likely than not a motivating cause of the employer's decision. Fuentes, 32 F.3d at 763-64.

Specifically, a plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proferred [sic] legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." Evans v. Pennsylvania Power & Light Co., 98 Fed. Appx. 151, 155 (3d Cir. 2004). "In simpler

terms, the plaintiff must show, not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason." Keller v. Orix Credit Alliance, 130 F.3d 1101, 1111 (3d Cir. 1997).

Moreover, "[a]lthough the presumption of discrimination drops out of the picture once the [Defendant meets its] burden of production, the trier of fact may still consider the evidence establishing the Plaintiff's prima facie case and inferences properly drawn therefrom . . . on the issue of whether the [Defendant's] explanation is pretextual." Chisholm v. National Corp. for Housing Ptnshp., No. 99-3602, 2001 U.S. Dist. LEXIS 1137, at *11 (E.D. Pa. Jan. 31, 2001).

### 2. Plaintiff's Prima Facie Case

I first address Defendant's argument that Plaintiff's claim fails, because she cannot demonstrate that she was treated differently than similarly situated persons.

Differential treatment, of course, is the sine qua non of a discrimination claim. Consequently, as part of the prima facie case, a plaintiff must show that she was treated differently than others who were similarly situated. Plaintiff bears the burden of proving that she was treated differently than similarly situated persons. Foxworth v. Pennsylvania State Police, 228 Fed. Appx. 151, 158 (3d Cir. 2007). Determining whether another employee was "similarly situated" to a plaintiff requires a fact-intensive assessment of factors such as salary, job function, duties, and other factors relevant to the particular workplace. Monaco

v. American Gen. Assur. Co., 359 F.3d 296, 305 (3d Cir. 2004).[9]

In support of her claim, Plaintiff offers the alleged differential treatment of a co-worker whom Defendant retained at the time that Plaintiff was laid off. For present purposes, I will accept that the co-worker, Tom Evans, was approximately thirty years old; was a Sandblaster in the Etch department; and was not included in the layoff, despite attendance infractions of a type and frequency not committed by Plaintiff. Nevertheless, this bare proffer does not permit the conclusion that Evans is an appropriate comparator for present purposes. I am without information that would allow meaningful comparison of the Sandblaster and Taper positions. Indeed, the only pertinent fact of record is that Taper was, at least in the opinion of the department supervisor, the least skilled position in the Etch department. This fact alone would differentiate that position from others in the department – including Sandblaster – and does not suggest that comparison between the two jobs is appropriate. The record evidence regarding Tom Evans, in other words, is insufficient to establish the required differential treatment, or buttress Plaintiff's prima facie case.[10]

Plaintiff also asserts that she was treated differently from the other two Tapers, who were discharged at the same time as she, because they were rehired later. Plaintiff frames the argument as a claim that the two rehired Tapers were,

---

[9] Monaco considered the "similarly situated" standard in the context of a prima facie case under a New Jersey statute analogous to the ADEA, but its reasoning has been applied to the ADEA. See, e.g., Klinman v. JDS Uniphase Corp., 439 F. Supp. 2d 401 (E.D. Pa. 2006).

[10] It is true that the evidence suggests that the Tapers' work, after the layoff, would be assumed by other workers. Plaintiff proffers no evidence, however, that a younger worker – such as Evans – in fact assumed plaintiff's work, thereby replacing her; this possibility cannot, therefore, support a prima facie case.

therefore, "retained" while she was permanently laid off.[11]  While perhaps superficially appealing, this proposition is not supported by any evidence.  It is undisputed that the other two Tapers reapplied and were at some point rehired in Lehr positions, rather than as Tapers, while Plaintiff did not reapply.  Without more, these bare facts cannot create a genuine issue of material fact with respect to differential discharge.   Plaintiff does not produce facts that would permit the conclusion that the comparators' discharge was, in any respect, not a true separation from employment, such that they could be considered retained.[12]   Accordingly, there is no evidence that Defendant treated Plaintiff differently, with respect to the termination, from the other two Tapers.  I am constrained, therefore, to find that all three Tapers were treated equally with respect to the discharge.

### 3. Pretext

I next address Defendant's argument that even if Plaintiff succeeds in making her <u>prima facie</u> case, she cannot demonstrate pretext.  Defendant has stated a legitimate, non-discriminatory reason for its conduct, in that the Etch department was told to identify three persons for layoff as part of a multi-

---

[11]  I note that Plaintiff does not press a distinct failure to rehire claim. The focus of her Complaint, as regards age discrimination, is her discharge.  She does not assert that she applied for a job following her termination, or otherwise made Defendant aware that she wished to be rehired.  This undermines the evidentiary status of the younger former Tapers as comparators for purposes of the rehiring, and would otherwise be fatal to a failure to hire claim. <u>See</u>  <u>Parker v. Univ. of Pa.</u>, 128 Fed. Appx. 944, 946 (3d Cir. 2005).

[12] To the contrary, the evidence to which Plaintiff points suggests that at least one of the rehired Tapers was rehired several months after her discharge.   Additionally, although she states that the younger Tapers were not "technically" recalled, I note that Plaintiff acknowledges that they were not discharged subject to recall, and produces no evidence that they were, technically or otherwise, recalled to employment.

department layoff, and the supervisor of the Etch department thereafter identified the three Taper positions, because they were the least skilled in the department.

Plaintiff first argues that there is a genuine issue of material fact regarding pretext, because the other two discharged Tapers, aged twenty-two and twenty-four, were later rehired.[13] It is undisputed that the other two Tapers reapplied for work with Defendant, and Plaintiff did not, and that they were rehired in Lehr positions, rather than the Etch department. The record is devoid of further information surrounding the circumstances of the rehiring. These bare facts, without more, would not permit a reasonable jury to either reject the Defendant's explanation for the layoff, or believe that Plaintiff's age was more likely than not a motivating cause of her discharge. Cf. Kulumani v. Blue Cross & Blue Shield Ass'n, No. 97 C 5391, 1999 U.S. Dist. LEXIS 11896, at *20 (N.D. Ill. July 27, 1999).

Plaintiff also asserts that her transfer into the Taper position, which is typically laid off first, and her subsequent layoff without recall, raise an issue surrounding pretext. Accepting the facts in a light most favorable to Plaintiff, I will assume that Plaintiff did not request the transfer. It is undisputed, however, that Plaintiff remained in the Taper position for approximately one full year after her transfer, and there is no evidence, for example, that Defendant anticipated future layoffs at the time of the transfer. In other words, the circumstances of

---

[13]Because there is no evidence that Evans was similarly situated to Plaintiff, I will not consider his retention as evidence of pretext. See Maull v. Div. of State Police, 39 Fed. Appx. 769 (3d Cir. 2002).

the transfer do not reasonably render Defendant's explanation unworthy of credence, or lead to the conclusion that Plaintiff's age was a factor in the layoff. Moreover, regarding the fact that the layoff was conducted without recall rights, Plaintiff acknowledges that all three Tapers were discharged without recall. This evidence, in its entirety, is far too tenuous to fulfill Plaintiff's burden.

Finally, because Plaintiff proffers her assessment that some people "didn't do as much" as her but were nonetheless retained, I must emphasize that her subjective opinions about her qualifications are insufficient to overcome summary judgment. Whether a court thinks that an employer misjudged a plaintiff's qualifications does not, in itself, make the employer's legitimate reasons unworthy of belief. <u>Ezold v. Wolf, Block, Schorr & Solis-Cohen</u>, 983 F. 2d 509, 531 (3d Cir. 1993). A district court may not second-guess the employer's business judgment. <u>Brewer v. Quaker State Oil Refining Corp</u>., 72 F. 3d 326, 332 (3d Cir. 1995). Courts are, therefore, to exercise caution when intruding into subjective employment decisions. <u>See</u> <u>Ezold</u>, 983 F. 2d at 527.

## CONCLUSION

In sum, I find that Plaintiff has failed to exhaust her administrative remedies with respect to her disability discrimination claim, and Defendant is entitled to summary judgment on that claim. Plaintiff may, of course, attempt to reassert that claim after meeting applicable requirements. With respect to her age discrimination claim, plaintiff has failed either to meet her <u>prima facie</u> burden, or has failed to adduce evidence sufficient to demonstrate such implausibilities in the Defendant's proffered legitimate reasons for its actions

that a reasonable factfinder could rationally find them unworthy of credence. I will, therefore, grant Defendant's Motion for Summary Judgment as to that claim, as well.

An appropriate Order follows.

**ORDER**

AND NOW, this 3rd day of April, 2008, it is hereby ORDERED, ADJUDGED, and DECREED that Defendant's Motion for Summary Judgment (Docket No. [36]) is GRANTED. As regards Plaintiff's ADA claim, judgment is entered without prejudice to Plaintiff. The clerk shall mark this matter closed forthwith.

BY THE COURT:

/s/Donetta W. Ambrose

Donetta W. Ambrose
Chief Judge, U.S. District Court